[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15066
Non-Argument Calendar
_____

Agency No. A215-765-773

SINTHUSAN SRIKANTHAVASAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 25, 2020)

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Sinthusan Srikanthavasan petitions for review of the Board of Immigration Appeals's decision to dismiss his appeal of the immigration judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. We dismiss his petition in part and deny it in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Srikanthavasan is a native and citizen of Sri Lanka. He entered the United States by swimming across the Rio Grande and was immediately detained. The government charged Srikanthavasan with being removable. Srikanthavasan conceded removability and filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. He alleged that he feared persecution and torture if removed to Sri Lanka because of his Tamil ethnicity, political opinions, and membership in the particular social groups of Tamil returned asylum seekers and witnesses to crime.

Srikanthavasan's application was based on two incidents. First, he alleged that the Sri Lankan police were looking for him because he had witnessed a police shooting. Second, Srikanthavasan alleged that five Sinhalese men beat him after trying to steal his motorcycle. In support of his application, Srikanthavasan submitted multiple human rights reports and news articles discussing ongoing torture in Sri Lanka and describing the shooting he had witnessed.

2

An immigration judge held a hearing on Srikanthavasan's application. After the immigration judge questioned Srikanthavasan about the two incidents mentioned in his application, Srikanthavasan's attorney stated that she wanted to ask him "some" questions. The immigration judge told her to ask a "few" because she had already "submitted substantial documentation." Srikanthavasan's attorney then questioned him at length and ended her examination by saying "[t]hat's all."

As to the first incident, Srikanthavasan testified that he was afraid the Sri Lankan police would torture him because he had witnessed several officers shoot two students. Although Srikanthavasan did not report what he saw, the police "somehow" found out that he was a witness. Srikanthavasan believed the police wanted to harm him because his account of the incident contradicted the official narrative of an accidental shooting. The police had already seized his friend, who also witnessed the shooting and was still missing. But Srikanthavasan conceded that he lived with his uncle after the shooting in a different city for eighteen months without incident. He also admitted that his parents told the police he was in India and the authorities believed them. Srikanthavasan acknowledged that the police had detained him at the airport as he left the country but let him depart after he bribed them.

As to the second incident, Srikanthavasan testified that five Sinhalese men beat him after he refused to give them his motorcycle. The immigration judge asked

Srikanthavasan why these men had attacked him, and he replied "they asked for my motorcycle and I refused to give them [it]. That's why." Srikanthavasan later added that these men wanted to harass Tamil people but he did not explain why he believed that. After Srikanthavasan reported the attack to the authorities, the police met with him and wrote a report but were unable to find his assailants.

The immigration judge denied Srikanthavasan's application. The immigration judge concluded that Srikanthavasan had "not show[n] any past persecution" based on a protected ground. As to the first incident, the immigration judge found that the Sri Lankan police targeted Srikanthavasan because he witnessed a crime, which was not "a particular social group." As to the second incident, the immigration judge found that Srikanthavasan failed to show that the men who attacked him and tried to steal his motorcycle did so "because he was Tamil," and further determined that the police's efforts to solve the crime showed Sri Lanka's ability and willingness to protect him. As for Srikanthavasan's fear of future persecution, the immigration judge found that he had not shown that Sri Lanka would assume that returning citizens were asylum seekers or persecute and torture returning Tamils. The immigration judge also found that Srikanthavasan had failed to establish that he could not go elsewhere in Sri Lanka to avoid the men who had attacked him.

4

The immigration judge alternatively found that Srikanthavasan was not credible and denied his asylum application because he used a human smuggler to enter the United States. Finally, the immigration judge denied Srikanthavasan's claim for relief under the Convention Against Torture, finding that he had failed to show that if removed he would likely be tortured by the Sri Lankan government or with its acquiescence.

Srikanthavasan appealed to the board, which dismissed his appeal. The board did not address the denial of asylum based on the adverse credibility determination or Srikanthavasan's use of a smuggler because it agreed with the finding that Srikanthavasan had not proven his eligibility for relief.

The board affirmed the finding that Srikanthavasan had not established that a protected ground was a central reason for his past persecution. As to the first incident, the board agreed that witnessing a crime was not a particular social group. As to the second incident, the board agreed that the men who attacked Srikanthavasan were motivated by crime. The board also agreed that Srikanthavasan had not established that Sri Lanka was unable or unwilling to protect him because the police investigated the attempted robbery. Regarding Srikanthavasan's fear of future persecution, the board adopted the immigration judge's finding that he had not shown that Sri Lanka would assume that a returning citizen was an asylum seeker. The board also found that because instances of returning Tamils being

5

harmed were "not widespread," Srikanthavasan had failed to prove that "returning asylum seekers, including those of Tamil ethnicity, have a well-founded fear of persecution."

After agreeing with the finding that Srikanthavasan had failed to establish his eligibility for asylum or withholding of removal, the board adopted the immigration judge's denial of Srikanthavasan's claim under the Convention Against Torture because the record did not establish a clear probability that he would be tortured if removed to Sri Lanka.

Finally, the board determined that the immigration judge had not violated Srikanthavasan's due process rights. The board rejected Srikanthavasan's claim that the immigration judge improperly limited his counsel's questions at the hearing, failed to consider the entire record, and was biased against him.

Srikanthavasan timely petitioned for review of the board's decision.

## STANDARD OF REVIEW

We review the board's decision as the agency decision, unless the board expressly adopts the immigration judge's opinion or agrees with its reasoning. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). When the board adopts or agrees with the reasoning of the immigration judge's decision, we review both decisions. Id.

6

We review factual determinations under the substantial evidence test, viewing the "record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision." Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1230 (11th Cir. 2007) (quotation marks omitted). We review de novo a claim that the agency failed to provide reasoned consideration for its decision, committed legal error, or violated the petitioner's due process rights. Jeune v. U.S. Att'y Gen., 810 F.3d 792, 799 (11th Cir. 2016) (citing Perez–Guerrero v. U.S. Att'y Gen., 717 F.3d 1224, 1230–31 (11th Cir. 2013)); Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003). But we cannot consider issues the petitioner could have but failed to exhaust before the board. 8 U.S.C. § 1252(d)(1); Bing Quan Lin v. U.S. Att'y Gen., 881 F.3d 860, 867 (11th Cir. 2018). To exhaust a claim, a petitioner must raise the "core issue" in his appeal to the board, see Montano Cisneros v. U.S. Att'y Gen., 514 F.3d 1224, 1228 n.3 (11th Cir. 2008), and "set out any discrete arguments he relies on in support of that claim." Jeune, 810 F.3d at 800 (citing Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1048 n.4 (11th Cir. 2009)).

## DISCUSSION

Srikanthavasan argues that: (1) the immigration judge and board failed to consider whether there was a pattern or practice of discrimination against Tamils in Sri Lanka; (2) the board erred in finding that a protected ground was not a central

7

reason for his persecution; (3) there was no substantial evidence to support the finding that Sri Lanka was able and willing to protect him; (4) the immigration judge and board failed to provide reasoned consideration in denying his claim for relief under the Convention Against Torture; (5) the immigration judge failed to consider reports in the record describing human rights abuses against Tamils in Sri Lanka; and (6) the immigration judge violated his due process rights by limiting his attorney's examination at the hearing, failing to consider the reports he submitted, and finding that his fear of being tortured was just a "story."

*Pattern or Practice of Persecution*

Srikanthavasan concedes that the board considered whether returning Tamil asylum seekers are subject to a pattern or practice of persecution in Sri Lanka, but argues that the immigration judge and board failed to address whether Tamils (seeking asylum or not) will be persecuted. We disagree.

An agency must give "reasoned consideration" to a petitioner's claims, Jeune, 810 F.3d at 803, and "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006) (citation omitted). The agency is "required to consider all evidence that a petitioner has submitted." Jeune, 810 F.3d at 803. But it "need not address specifically each

claim the petitioner made . . . ." Cole v. U.S. Att'y Gen., 712 F.3d 517, 534 (11th Cir. 2013) (quotation omitted).

Here, the immigration judge found that Srikanthavasan had not shown that returning Tamils would be persecuted in Sri Lanka. The board likewise concluded that Srikanthavasan had failed to prove that returning Tamil asylum seekers have a well-founded fear of persecution. By finding that a specific subset of Tamils were not subject to a pattern or practice of persecution, the immigration judge and the board implicitly determined there was not a pattern or practice of persecution against all Tamils.[1] See Najjar v. Ashcroft, 257 F.3d 1262, 1294 (11th Cir. 2001) (upholding finding "implicit" to the immigration judge's decision). This is a matter of basic logic. After all, persecuting every Tamil would necessarily include persecuting every Tamil asylum seeker. Thus, the immigration judge and board gave reasoned consideration to Srikanthavasan's claim.

*Nexus Between Persecution and a Protected Ground*

Srikanthavasan argues that the board erred in finding that a "protected ground" was not a central reason for his alleged past persecution or potential future persecution. He contends that a "context sensitive analysis" of the political situation in Sri Lanka shows that his Tamil ethnicity was a central reason for his persecution

---

[1] This conclusion was consistent with our recent decision in Lingeswaran v. U.S. Att'y Gen., 969 F.3d 1278, 1291 (11th Cir. 2020), where we found substantial evidence that the Sri Lankan government does not have a pattern or practice of persecuting Tamils.

by the Sri Lankan police.  He similarly argues that his ethnicity was a central reason for the motorcycle incident.

Nothing in this record "compel[s] us to overturn" the "factual finding that [Srikanthavasan] was not persecuted on account of a protected ground."  See Lingeswaran, 969 F.3d at 1288.  Srikanthavasan testified that the police wanted to harm him because they claimed that the shooting he witnessed "was an accident" and he said "that it wasn't."  He admitted on cross-examination that his status as a witness was "the only reason" why the police were looking for him.  Viewing the evidence in the light most favorable to the immigration judge and board's finding, as we must, we cannot say that a central reason the police desired to harm Srikanthavasan was his ethnicity.

As for the motorcycle incident, Srikanthavasan testified that the Sinhalese men attacked him because "they asked for [his] motorcycle and [he] refused to give them [it]."  By his own admission,  "[t]hat's why" he was targeted.  Although Srikanthavasan later testified that the men were looking for an excuse to mistreat him because he was Tamil, where there are conflicts in the record "we do not reweigh the evidence."  Mu Ying Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1156 (11th Cir. 2014).  Instead, we ask only whether the board's finding was supported by "reasonable, substantial, and probative evidence on the record considered as a

whole." <u>Najjar</u>, 257 F.3d at 1283–84 (quotation omitted).  That highly deferential standard is satisfied here.

In sum, substantial evidence supported the finding that Srikanthavasan failed to establish a nexus between past or future persecution and a protected ground.  The political and historical backdrop in Sri Lanka is no basis to disturb factual findings with record support.

*Sri Lanka's Ability and Willingness to Protect Srikanthavasan*

Srikanthavasan contests the board's decision, adopting the finding of the immigration judge, that Sri Lanka was able and willing to protect him from persecution.  He argues that this finding was unsupported by substantial evidence.

But we cannot review a claim where the petitioner has failed to exhaust "all administrative remedies available to [him] as of right."  8 U.S.C. § 1252(d)(1).  Where a petitioner does not assert an issue before the board and then raises it before us, he has "failed to exhaust his administrative remedies."  <u>Jeune</u>, 810 F.3d at 800 (citing <u>Amaya-Artunduaga v. U.S. Att'y Gen.</u>, 463 F.3d 1247, 1250–51 (11th Cir. 2006)).  In his appeal to the board, Srikanthavasan did not challenge the immigration judge's finding that Sri Lanka was able and willing to protect him.  Because Srikanthavasan failed to exhaust his administrative remedies, we lack jurisdiction to hear this claim.  See <u>Jeune</u>, 810 F.3d at 800–01; 8 U.S.C. § 1252(d)(1).

11

Although the board sua sponte addressed whether Sri Lanka could and would protect Srikanthavasan, that "does not alter our conclusion" regarding our lack of jurisdiction. See Amaya-Artunduaga, 463 F.3d at 1250. The exhaustion doctrine exists to "avoid premature interference with administrative processes," to "allow the agency to consider the relevant issues," to give it "a full opportunity to consider a petitioner's claims," and "to allow the [board] to compile a record which is adequate for judicial review." Id. (quotations and citation omitted). Reviewing a claim "that has not been presented to the [board], even when the [board] has considered the underlying issue sua sponte, frustrates these objectives." Id. We therefore dismiss Srikanthavasan's challenge to the board's finding on whether Sri Lanka was able and willing to protect him from persecution.

*Relief Under the Convention Against Torture*

The board agreed with the denial of Srikanthavasan's claim under the Convention Against Torture, finding that he had not shown a likelihood of torture if removed to Sri Lanka. Srikanthavasan argues that the board and immigration judge failed to provide reasoned consideration in denying this claim.

To be eligible for relief under the Convention Against Torture, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The agency must consider "all evidence relevant to the possibility of future torture," including:

12

"(i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal."

Perez-Guerrero, 717 F.3d at 1232 (quoting 8 C.F.R. § 208.16(c)(3)). "The burden of proof for an applicant seeking withholding of removal under the Convention . . . is higher than the burden imposed on an asylum applicant." Najjar, 257 F.3d at 1303.

Srikanthavasan "fails to appreciate that, before deciding whether [he] was entitled to protection under the Convention Against Torture," the immigration judge and the board "discussed [his] application for [asylum] based upon the same set of facts." See Malu v. U.S. Att'y Gen., 764 F.3d 1282, 1293 (11th Cir. 2014). In rejecting his asylum claim, where Srikanthavasan shouldered a lesser burden, the immigration judge considered that: (1) the people who had beaten him were not government actors; (2) the police investigated the crime; and (3) Srikanthavasan successfully bribed the Sri Lankan police before he left the country. The board also considered these facts, as well as record evidence that harm to returning Tamil asylum seekers was "not widespread" and usually limited to those with ties or perceived ties to the Liberation Tigers of Tamil Eelam. These facts were all relevant

13

to and weighed against the likelihood of Srikanthavasan being tortured by or with the acquiescence of the Sri Lankan government.[2]  See 8 C.F.R. § 208.16(c)(3).

Reasoned consideration does not require explicit analysis.  The immigration judge and board must consider all claims in an application but "need not address specifically each claim . . . ."  Cole, 712 F.3d at 534 (quotation omitted).  Because the immigration judge and the board meaningfully reviewed the facts of Srikanthavasan's torture claim, we have no basis to remand for the agency to further explain its decision.  See Jeune, 810 F.3d at 803.

*Failure to Consider Evidence*

Srikanthavasan argues that the immigration judge legally erred by not considering reports describing the ongoing torture of Tamils committed by Sri Lankan security forces.  But we don't require an immigration judge to "address specifically each . . . piece of evidence the petitioner presented."  Tan, 446 F.3d at 1374 (quoting Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000)).  The immigration judge here analyzed Srikanthavasan's claims of past persecution and fear of future persecution and torture, and made sufficient findings on whether he had met his burden of proof.  The evidence before the immigration judge supported his findings.

---

[2] In Lingeswaran, we rejected a similar claim for relief under the Convention Against Torture due to substantial evidence of Sri Lanka's efforts to curb torture.  969 F.3d at 1293–94. These efforts precluded a finding that the Tamil petitioner in Lingeswaran faced torture with the "acquiescence" of Sri Lankan officials, since "[a] government does not 'acquiesce' to torture where it 'actively, albeit not entirely successfully, combats' the alleged torture."  Id. at 1294 (quoting Reyes–Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004)).

The 2018 State Department Country Report, for example, described how the Sri Lankan government had recently taken "steps to investigate, prosecute, and punish" officials responsible for human rights abuses; maintained a Committee on the Prevention of Torture, which examined allegations of torture and took preventive measures to stop it; and created programs designed to address the needs and grievances of the Tamil community.

The order of removal shows that the immigration judge has "heard and thought and not merely reacted." Lin, 881 F.3d at 874 (internal quotations omitted). Thus, the failure to specifically address every iota of record evidence was not legal error.

*Due Process Claims*

Srikanthavasan argues that the immigration judge violated his due process rights by: (1) limiting his attorney's examination at the merits hearing; (2) failing to consider probative evidence; and (3) finding that Srikanthavasan's fear of being tortured following removal was a "story" concocted by the person who helped him enter the United States.  We hold that no due process violation occurred here.

Aliens facing removal are entitled to due process, which is "satisfied only by a full and fair hearing."  Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987). Srikanthavasan must first establish that the immigration judge deprived him of liberty without due process of law, and then prove that this violation caused him

substantial prejudice.  See Lonyem, 352 F.3d at 1341–42.  "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different."  Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010) (citing Ibrahim, 821 F.2d at 1550).

An immigration judge has "broad discretion 'to control the manner of interrogation in order to ascertain the truth.'"  Mikhailevitch v. INS, 146 F.3d 384, 391 (6th Cir. 1998) (quoting Iliev v. INS, 127 F.3d 638, 643 (7th Cir. 1997)).  Here, the immigration judge told Srikanthavasan's counsel to ask a "few" questions because Srikanthavasan had already "submitted substantial documentation" in support of his claim.  This comment, Srikanthavasan argues, was an unconstitutional limitation on his right to present a case.

But the record shows that Srikanthavasan's counsel was given a full and fair opportunity to examine her client.  Following the remark, counsel questioned Srikanthavasan at length about his claims.  The immigration judge did not cut off her questions, allowed counsel to pause to consult her notes, and let her keep going when she had "a couple more questions" for Srikanthavasan.  Counsel asked her final question and then stated "[t]hat's all."  After the government cross-examined Srikanthavasan, the immigration judge allowed his counsel to "ask a couple more" questions.  Again she examined Srikanthavasan, without interruption, and then said, "I think that's it, Judge."

The immigration judge's desire to conduct an efficient hearing did not violate Srikanthavasan's right to a "fair [hearing] in a fair tribunal." See Callahan v. Campbell, 427 F.3d 897, 928 (11th Cir. 2005) (quoting In re Murchison, 349 U.S. 133, 136–37 (1955)). By counsel's own admission, she asked "all" the questions that she had for Srikanthavasan. He was therefore not deprived of his right to present a case. Moreover, Srikanthavasan does not argue what additional information counsel would have elicited but for the immigration judge's isolated remark. Accordingly, he has not shown that any error affected the outcome of the proceedings. See Ibrahim, 821 F.2d at 1550.

As for Srikanthavasan's claim that the immigration judge "violated his right to due process by not considering the evidence he presented, he is incorrect." See Sama v. U.S. Att'y Gen., 887 F.3d 1225, 1234 (11th Cir. 2018). Because the immigration judge was not required to address every piece of evidence, Tan, 446 F.3d at 1374, the order of removal did not deprive Srikanthavasan of due process merely because it failed to mention every report or article in this lengthy record favorable to Srikanthavasan's position, see Sama, 887 F.3d at 1234.

Finally, there was no due process violation in the immigration judge's finding that Srikanthavasan's application was a "story." The immigration judge made this finding after considering "the internal consistency and inherent persuasiveness" of Srikanthavasan's testimony. Because an immigration judge "must determine

17

credibility," see D–Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004) (citation omitted), the performance of this task is not proof of impartiality. As the Supreme Court has recognized in the context of recusal for federal judges, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994); see also Yosd v. Mukasey, 514 F.3d 74, 78 (1st Cir. 2008) (applying Liteky to hold that the board's remand for a second hearing before an immigration judge who found the alien to not be credible at the first hearing did not violate due process). Nor can Srikanthavasan establish substantial prejudice because the board affirmed the denial of his application even assuming that he was credible. Srikanthavasan therefore cannot show that but for this adverse credibility finding he would have obtained a different result. See Ibrahim, 821 F.2d at 1550.

## CONCLUSION

We dismiss the portion of Srikanthavasan's petition challenging the finding that Sri Lanka was able and willing to protect him. We deny the rest of the petition.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

18